## No. 12,504.

### Union Deposit Company *v.* Schulte.

(7 P. [2d] 820)

Decided January 11, 1932. Rehearing denied February 8, 1932.

Mr. Page M. Brereton, Mr. Harrie M. Humphreys, for plaintiff in error.

Mr. S. R. Robertson, Mr. Philip Hornbein, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court. They are hereinafter designated as Schulte and the company.

Schulte brought this action against the company for damages in the sum of $125,000 for his alleged wrongful discharge from its service. To review a judgment in his favor for $45,000, entered on the verdict of a jury for that amount, the company prosecutes this writ.

The company was engaged in the business of issuing and selling certain contracts. These were of three classes designated respectively "ten year accumulative installment bonds," "ten year one payment bonds," and "ten year coupon bonds." By written contract it employed Schulte to manage the sale thereof. This contract provided, inter alia, that Schulte's employment was exclusive; that he should collect the first payment on each bond sold, deduct his commission, and remit the balance; should "cause surety bonds, guaranteeing fidelity, to be taken out for himself and each subagent employed by him, in the sum of One Thousand Dollars each, loss, if any, payable to the company and such bonds shall be kept in force during the term hereof"; that Schulte should "devote himself exclusively" to the business and "not engage in any other business or sell any securities for others"; and that the contract was "personal in its nature," and should "not pass to the heirs, executors, assigns or successors in interest of either party."

The complaint alleged that this contract was for a term of ten years. The answer asserted that it was at will and that Schulte had violated it in various specified particulars, inter alia: (1) That he did not devote himself exclusively to the business and that he sold securities for others; (2) that he did not keep the surety bonds of his subagents in force.

At the close of Schulte's evidence the company moved for a nonsuit. That motion was overruled, and the prop-

er proceedings were had, and the proper record made to entitle the company to present these points by this writ.

If Schulte violated his contract in either of these particulars, and we think the record shows a violation in each, the term of the contract is immaterial, and it is equally immaterial that other violations were charged and not established.

1. It is undisputed that Schulte carried an account with Otis & Company, investment brokers; that he "sold short," through them, one hundred shares of "General Electric"; that he acted as agent for one Andress in dealing with them; and that he so carried on business for his wife. The extent of the latter transactions is shown only by his counsel's reference to them as "a little deal for his wife," and "a little business for his wife." All attempts to elicit further information on the subject were frustrated by objections made and sustained. The transaction in General Electric involved over $13,000. These deals were in express violation of Schulte's contract. If authority were requisite to demonstrate their sufficiency to support its cancellation by the company the following is sufficient. "It is equally true that the employer has the right to demand that the employee shall not, by engaging in other employment, either mentally or physically, impair his ability to give the best service of which he is capable." *First Calumet Trust & Savings Bank v. Rogers,* 289 Fed. 953, 958.

2. Schulte and his subagents handled considerable sums of money for the company and the vital necessity for their bonding is apparent. In partial compliance with his contract in this respect Schulte carried a blanket bond for these subagents. By its terms it was cancellable by the surety on fifteen days' notice. On April 5, he received notice from the surety of such cancellation. Eleven days later the company wrote him that a new bond must be secured not later than April 21, stating, "We cannot and will not consent to any modification or violation of your contract with us in this be-

half.'' Schulte did nothing until, under date of April 21, he wrote the company, sending it a ''bond'' with himself as surety, to ''be in force until replaced by bonds isuued by a Surety Bond Company, as soon as I have completed my arrangements with them.'' This was expressly limited to five of his salesmen but not signed by them. As to the others, some fifteen in number, he asks the company for ''suggestions,'' saying, ''It is my intention to reduce my force, which necessitates their discharge for the present.'' The sole ''surety'' on this bond was Schulte himself and one of its provisions was that he might cancel it on fifteen days' notice to the company. Under date of April 24, the company wrote him, rejecting this bond for many reasons, and for non-compliance with his contract in this respect, and many other alleged breaches of it, it declared the same forfeited and Schulte discharged.

It is contended that a substantial compliance by Schulte with this contract to keep his subagents bonded is thus shown, that he was entitled to a reasonable time to get new bonds after the cancellation of the old, and that his attempt to do so was frustrated by his discharge.

Schulte's duty was to keep his contract. His subagents' bond should, and presumably did, give a reasonable time after notice of cancellation to permit a replacement. The two weeks allowed should have been ample. If any interval was permitted to elapse between the two he did not ''keep'' those subagents bonded, and losses occurring during that interval would be beyond the company's recovery. The absurdity of his attempt to substitute a so-called bond with himself as surety, appears when we remember that his contract required the bonding, not only of his subagents, but of himself, and that he had given no bond. If, as contended, the company had waived as to him, this only detracted from his availability as a surety for others.

On this point counsel for the company cite *Leopold v. Hotel Shelburne, Inc.,* 146 N. Y. S. 289, and counsel for Schulte say, ''We are quite willing that this decision

control the case at bar." There Leopold had contracted to begin work for the hotel May 1. The preceding day it was agreed he should give bond. He applied to a surety company and was rejected. May 10, he was discharged for failure to keep his contract. A few days later he received notice from the surety company that it had reconsidered and decided to write the bond, but his place had meanwhile been filled. He brought suit and recovered, but the appellate court reversed the judgment and ordered the cause dismissed. This is clearly a decision that failure to give bond as per contract justifies discharge. But counsel for Schulte say it supports their theory of reasonable time, quoting, "The defendants showed him great consideration and forbearance, and only discharged him after he had repeatedly failed to obtain a bond, as required by his contract." This language is against Schulte, not for him. If Leopold was entitled in law to ten days there was no "great consideration and forbearance." Moreover, if ten days in that case was "great consideration and forbearance" fifteen days here allowed Schulte was certainly no hardship. It must not be forgotten, however, that Leopold only knew one day in advance that he was to give bond, whereas Schulte knew, by the express terms of his solemn covenant, that he must "keep" these bonds in force and that the fifteen days allowed him to replace them after their termination was a provision which he himself had voluntarily accepted.

We think Schulte's own evidence shows that he had breached his contract in vital particulars and that his discharge was thereby justified. That being true the motion for nonsuit should have been sustained.

The judgment is accordingly reversed and the cause remanded with directions to the trial court to dismiss it at the costs of plaintiff.